IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LUCY TRUITT, et al., | |
| Plaintiffs, | CIVIL ACTION FILE |
| v. | NO. 1:15-CV-04295-SCJ-WEJ |
| ATLANTA INDEPENDENT SCHOOL SYSTEM, a/k/a Atlanta Public Schools, | |
| Defendant. | |

**ORDER AND
NON-FINAL REPORT AND RECOMMENDATION**

This is a civil rights action alleging discrimination in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §

621 et seq., and the Older Worker Benefits Protection Act of 1990 ("OWBPA"),

29 U.S.C. § 623 et seq.  (See Am. Compl. [2].)[1]  Now pending before the Court is

_____

[1] Plaintiffs filed an Amended Complaint on April 7, 2016.  (See Am. Compl.)  That pleading supersedes the original Complaint.  See Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.").

Defendant's Motion to Dismiss Plaintiffs' Collective Action Complaint for Age Discrimination [6].   For the reasons explained below, the undersigned **RECOMMENDS** that said Motion be **DENIED.**

## I.   <u>MOTION TO DISMISS STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff.  <u>Rivell v. Private Health Care Sys., Inc.</u>, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam).

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions.  <u>Chandler v. Sec'y of Fla. Dep't of Transp.</u>, 695 F.3d 1194, 1199 (11th Cir. 2012) (per curiam) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  When evaluating the sufficiency of a plaintiff's complaint, the court makes reasonable inferences in favor of the plaintiff, but is not required to draw the plaintiff's inference.  <u>Aldana v. Del Monte Fresh Produce, N.A., Inc.</u>, 416 F.3d 1242, 1248 (11th Cir. 2005) (per curiam).  Similarly, the Court does not accept as true "unwarranted deductions of fact or legal conclusions masquerading as facts."

2

Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) (internal quotation marks and citation omitted).

Finally, the Court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." Chandler, 695 F.3d at 1199 (internal quotation marks and citation omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations and footnote omitted). Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss. Id. Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A complaint in an employment discrimination case need not contain specific facts establishing a prima facie case under the evidentiary framework for such cases to survive a motion to dismiss.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11 (2002).  Nevertheless, complaints alleging discrimination still must meet the plausibility standard of Twombly and Iqbal.  See Edwards v. Prime, Inc., 602 F.3d 1276, 1300-01 (11th Cir. 2010) (noting that to state a hostile work environment claim post-Iqbal, recitals of the cause of action do not suffice and that employee "was required to allege" five prima facie elements); see also McCone v. Pitney Bowes, Inc., 582 F. App'x 798, 801 (11th Cir. 2014) (noting that for post-Sweirkiewicz employment discrimination cases, courts still must ". . . consider whether the complaint satisfies Iqbal's 'plausible on its face' standard and whether the allegations are sufficient to 'raise a right to relief above the speculative level' under Twombly.").

## II.  THE AMENDED COMPLAINT

Plaintiffs Cathy Hopkins, Mary Dent, Earnest Edmondson, Nyantakyl Kwasi Appiah, Vivian Blackmon, Wanda Ellis, Cheryl Patterson, and Lucy Truitt initiated this suit on December 10, 2015.  (See Compl. [1].)  Plaintiffs filed an Amended Complaint on April 7, 2016.  (See Am. Compl.)  In the Amended Complaint, plaintiffs allege that defendant, Atlanta Public Schools ("APS"),

4

discriminated against them on the basis of age in violation of the ADEA and OWBPA (Am. Compl. Counts I & II) and seek various forms of equitable relief, attorneys' fees and costs, and compensatory and punitive damages (id. at 45).[2]

Specifically, plaintiffs allege that, since at least August 2014, APS has "maintained a system of discrimination and fostered age prejudice" and engaged in "a systematic pattern and practice of unlawful employment practices" based on age by, inter alia, unfairly subjecting older teachers to harsh evaluations, denying them resources and opportunities freely given to younger teachers, forcing them to transfer to difficult schools, refusing to renew their contracts, eliminating their job positions for pretextual reasons, forcing retirement, and withholding information and assistance regarding other available job positions within APS. (Am. Compl. ¶¶ 4, 31-37.)   The Amended Complaint also contains individual allegations made by each of the eight named plaintiffs regarding specific acts of age discrimination.  Plaintiffs allege that they have each filed timely charges with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 30.)

_____

[2] Plaintiffs also allege that they seek class certification, and that more than 200 fellow older teachers with "nearly identical claims" will join this action. (Am. Compl. ¶¶ 6, 17, 19-29.)

### A.   Plaintiff Cathy Hopkins

Ms. Hopkins alleges that she is fifty-nine years old and worked for APS for twenty-five years, most recently as an Early Childhood Development teacher at Alonzo A. Crim Open Campus High School ("Crim").  (Am. Compl. ¶ 38.)  Ms. Hopkins alleges that she holds multiple certifications, and had always received satisfactory or above evaluations until the 2014-2015 school year, when she was given poor performance scores on her evaluations and placed on a Professional Development Plan ("PDP").  (Id. ¶¶ 39-40.)  Ms. Hopkins alleges that on May 16, 2015, she received a letter from APS informing her that her position was abolished.  (Id. ¶ 42.)  She was not told how to apply for other open positions. (Id.)  Ms. Hopkins formally retired from APS on May 28, 2015, and filed an EEOC charge based on age discrimination on November 6, 2015.  (Id. ¶ 43.)

### B.   Plaintiff Mary Dent

Ms. Dent alleges that she is sixty-six years old and worked for APS for over twenty-one years, most recently as a Business Education teacher at Crim. (Am. Compl. ¶ 44.)  Ms. Dent alleges that in February 2015, she was advised by Crim's principal that her position was being abolished, but that she could apply for other available positions.  (Id. ¶ 45.)  Ms. Dent alleges that despite following all instructions regarding placement, and contacting all of the schools that had

6

available positions for which she was qualified, APS failed to provide documentation necessary for her rehire.  (Id. ¶¶ 46-47.)  Ms. Dent alleges that she went to APS's main offices to complain, after which she received two interviews, but no job offer.  (Id. ¶¶ 48-49.)  Ms. Dent was ultimately offered, and accepted, a position with another school district.  (Id. ¶ 50.)  She alleges that APS contacted her after the 2015-2016 school year had begun, informing her that she could re-start the application process for a new position that had become available, but that she instead filed an EEOC charge based on age discrimination in June 2015 because APS made the rehiring process difficult.  (Id. ¶¶ 51-52.)

### C.  Plaintiff Earnest Edmondson

Mr. Edmondson alleges that he is sixty-three years old and worked for APS for twenty-three years, most recently as a fourth and fifth grade Instruments Music teacher at four APS elementary schools, Frank L. Stanton Elementary, Bolton Academy Elementary, Finch Elementary School, and Thomasville Heights Elementary School.  (Am. Compl. ¶ 53.)  Mr. Edmondson alleges that he had always received satisfactory or above evaluations until the 2014-2015 school year, when the principal at Bolton Academy criticized his students' holiday music performance and placed him on a PDP.  (Id. ¶¶ 54-55.)  Mr. Edmondson alleges that the principal at Bolton treated him and two other older music teachers

7

differently than a younger music teacher, specifically that she treated the younger teacher as the Lead Teacher, and that she provided Promethean interactive whiteboards to all teachers in the Connections Department (Music, P.E., Spanish, Art) except the older teachers.  (Id. ¶¶ 56-57.)

Mr. Edmondson alleges that on April 1, 2015, he received a letter from APS Human Resources stating that APS was currently engaged in the process of reducing the district's operating budget, and as a result, his employment contract for the 2015-2016 school year would be held.  (Am. Compl. ¶ 58.)  On May 16, 2015, Mr. Edmonson alleges that he received a letter from the APS Superintendent stating that she was not recommending that his contract be renewed because his position had been abolished.  (Id. ¶ 59.)  Mr. Edmonson alleges that rather than face termination, he retired, and filed an EEOC charge based on age discrimination on November 5, 2015.  (Id. ¶ 61.)

### D.   Plaintiff Nyantakyl Kwasi Appiah

Mr. Appiah alleges that he is sixty-six years old and worked for APS for over twenty-one years, most recently as a Chemistry, Physics, and Physical Science teacher at Crim.  (Am. Compl. ¶ 62.)  Mr. Appiah alleges that he has received numerous awards, including a teacher of the month award in December 2014.  (Id. ¶¶ 62-63.)  Mr. Appiah alleges that he was placed on a PDP one month

later, in January 2015, and was subsequently subject to observation, evaluation, and negative feedback from administrators and the Crim principal.   (Id. ¶ 64.) Mr. Appiah alleges that in March 2015, while still completing his PDP, he was advised that his employment contract for the 2015-2016 school year was being held, and that he should apply to other schools.  (Id. ¶ 65.)

After completing the PDP in April 2015, Mr. Appiah applied for other open APS positions, but did not receive any job offers.  (Am. Compl. ¶ 66.)  In early April or May 2015, he received a letter from APS informing him that his position at Crim was being abolished for budgetary reasons and that his previously held employment contract would not be released.  (Id.)  Mr. Appiah alleges that he was then hired into a new position within APS at Young Middle School beginning August 2015, but was placed on another PDP three weeks into the school year due to low evaluation scores from his previous year at Crim.  (Id. ¶¶ 67-69.)  In November or December 2015, Mr. Appiah alleges that he saw his previously abolished position at Crim advertised online as available, and immediately applied for it.  (Id. ¶ 70.)  Mr. Appiah alleges that he received an email denying him the job, citing "Lateral Move" as the reason for the denial; a younger teacher was ultimately placed in the position.  (Id. ¶¶ 70-71.)  On December 7, 2015, Mr. Appiah alleges that he was notified that his August 2015 PDP was invalidated, so

9

he would be placed on a third PDP.  (Id. ¶¶ 72-73.)  In ill health, rather than complete it, Mr. Appiah alleges that he was forced into retirement on January 31, 2016.  (Id. ¶ 74.)

### E.   Plaintiff Vivian Blackmon

Ms. Blackmon alleges that she is fifty-three years old and worked for APS for over thirty years, most recently as a first grade teacher at Woodson Elementary.  (Am. Compl. ¶ 75.)  Ms. Blackmon alleges that she holds various certifications, and had always received exemplary evaluations until 2013.  (Id. ¶¶ 75-76.)  During the 2015-2016 school year, Ms. Blackmon alleges that she experienced disruptions and difficulties in the classroom after she was given a class with thirteen diagnosed severe academic and behavioral problem students, despite never having, or hearing of any other teacher having, that number of academic and behavioral problem students in the same class.  (Id. ¶¶ 77-78.)  Ms. Blackmon alleges that despite sharing her concerns with the Woodson principal and supervisor, she received no help in her classroom, but was instead subject to evaluations and observations, after which she received "confusing" feedback lacking specific details, but accusing her of wrongdoing.  (Id. ¶¶ 79-81.)

Ms. Blackmon alleges that, unlike younger teachers, she was not permitted to hold any Lead Teacher positions, go on paid work studies, participate in special

events at Woodson, or attend staff development classes.  (Am. Compl. ¶ 82.)  She alleges that she was aware that older teachers throughout APS were being subjected to poor evaluations, observations, being placed on PDPs and "forced out," and thus decided to retire on January 27, 2016, as she felt retirement was "the only alternative to enduring a long process of being subjected to harassment and ultimately fired."  (Id. ¶¶ 83-84.)

### F.   Plaintiff Wanda Ellis

Ms. Ellis alleges that she is fifty years old and worked for APS for sixteen years, primarily as a middle school Social Studies teacher.  (Am. Compl. ¶ 85.) Ms. Ellis alleges that she was transferred to Sylvan Middle School ("Sylvan") for the 2011-2012 school year, and immediately encountered difficulties with the new principal, assigned that same year.  (Id. ¶¶ 86-87.)  Ms. Ellis alleges that she was placed on a PDP during the 2013-2014 school year "for reasons unknown to her," and that after satisfactorily completing it, the Sylvan principal recommended that her contract not be renewed, although his recommendation was not accepted.  (Id. ¶ 88.)  Ms. Ellis alleges that the Sylvan principal then placed her on another PDP during the 2014-2015 school year; once she had completed it, she was informed that she did not make sufficient growth on the Teacher Keys Effectiveness System, so it was considered incomplete.  (Id. ¶ 89.)

11

On May 8, 2015, Ms. Ellis was notified that the APS Superintendent had recommended that her employment contract be non-renewed for the 2015-2016 school year for, <u>inter alia</u>, incompetency and willful neglect of duties.  (Am. Compl. ¶ 90.)  Ms. Ellis requested a hearing before a tribunal appointed by the APS board to contest that recommendation.  (<u>Id.</u> ¶ 91.)  Ms. Ellis alleges that the tribunal upheld the Superintendent's recommendation, finding her incompetent and willfully neglectful of her duties, despite the fact that she always fell in the "meet expectation" category for statewide testing, ranked among the highest in her grade level, and was selected as a supervisor for a student teacher.  (<u>Id.</u> ¶¶ 92-95.)  The tribunal submitted its findings on September 14, 2015, and APS notified Ms. Ellis it had accepted them on October 5, 2015.  (<u>Id.</u> ¶ 96.)  Ms. Ellis filed a charge of discrimination with the EEOC on November 5, 2015.  (<u>Id.</u> ¶ 97.)[3]

### G.  Plaintiff Cheryl Patterson

Ms. Patterson alleges that she is fifty-nine years old and worked for APS for over twenty-three years, most recently as a seventh grade teacher at Sylvan.  (Am. Compl. ¶ 98.)  Ms. Patterson alleges that she had always received high

--------------------------------

[3] Ms. Ellis alleges that the charge was timely filed because the EEOC offices were closed on November 4, 2015 due to a water problem in the EEOC building.  (Am. Compl. ¶ 97.)

performance evaluations until the 2014-2015 school year.  (Id. ¶¶ 99-100.)  Ms. Patterson alleges that in the fall of 2013, the Sylvan principal called her into his office for a meeting and asked her how many years she had before she could retire.  (Id. ¶ 100.)  Ms. Patterson further alleges differential treatment compared to younger teachers, specifically that during the 2014-2015 school year, she accepted a position as the cheerleading coach, but the principal took the position away from her without explanation and gave the position to a younger teacher, that she was told by a younger teacher that she could not be a Social Science Fair judge, serve as a lead teacher, go on paid workshops, and that she could not participate in Sylvan special events, though younger teachers could.  (Id. ¶¶ 101-05.) Ms. Patterson also alleges that during the 2014-2015 school year she was subject to "harassing and intimidating observations" and "heightened scrutiny," including by her evaluator, who was a much younger teacher, and placed on a PDP.  (Id. ¶ 106.)

On May 23, 2015, Ms. Patterson was told APS would not be renewing her employment contract for the following school year, a decision that was upheld after a hearing in front of an internal tribunal.  (Am. Compl. ¶ 107.)  Ms. Patterson alleges that the Sylvan principal testified at this hearing that her position was filled by a much younger teacher.  (Id. ¶ 108.)  Ms. Patterson filed

13

an EEOC charge on August 15, 2015, and was issued a notice of right to sue on February 2, 2016.  (Id. ¶ 109.)

### H.   Plaintiff Lucy Truitt

Ms. Truitt alleges that she is fifty-six years old and worked for APS for over twenty years, most recently as a second grade teacher at Heritage Academy Elementary School.  (Am. Compl. ¶ 110.)  Ms. Truitt alleges that she had always received positive evaluations until the 2013-2014 school year, when she was given a class containing several students diagnosed with behavioral disorders, and APS did not provide her with a Promethean board or student books for reading, English language arts, or social studies.  (Id. ¶¶ 112-13.)  Ms. Truitt alleges that despite these challenges, her students' end-of-year test scores for the 2013-2014 school year were comparable to those of other second grade classes.  (Id. ¶ 114.)  Ms. Truitt alleges that she was subjected to eighteen in-class observations during the 2014-2015 school year, which resulted in harsh and unjustifiable critiques.  (Id. ¶ 115.)   Ms. Truitt was given the lowest possible performance evaluation scores, even after asking for guidance, and placed on a PDP on October 28, 2014.  (Id. ¶¶ 116-19.)

On May 28, 2015, Ms. Truitt received a letter from APS informing her that her employment contract would not be renewed for the following school year due

to incompetency and willful neglect of duties.   (Am. Compl. ¶ 121.)   She unsuccessfully challenged the non-renewal at an internal hearing, and on November 12, 2015 the tribunal recommended that she be terminated.   (Id. ¶¶ 122-23.)   The APS board adopted the tribunal's recommendation in December 2015.  (Id. ¶ 123.)   Ms. Truitt filed a charge with the EEOC on August 26, 2015, and was issued a notice of right to sue on September 11, 2015.  (Id. ¶ 124.)

## III.   DISCUSSION

Defendant argues that plaintiffs have failed to state a claim under the ADEA because they have failed to exhaust administrative remedies, that their OWBPA claim fails because that statute does not create a private right of action, and that the Amended Complaint should be dismissed as an improper shotgun pleading.   (See generally Def.'s Mem. of Law in Supp. of its Mot. to Dismiss ("Def.'s Br.") [6-1].)   Alternatively, APS moves for a more definite statement of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(e).   (Id.) Plaintiffs respond that they have sufficiently alleged that they have exhausted all administrative remedies, state that they will dismiss the OWBPA claim without prejudice and seek leave to amend the Amended Complaint accordingly, and assert that they have sufficiently plead their claims, noting that they will seek leave to amend to add a hostile work environment claim.  (See generally Pls.'

15

Mem. of Law in Supp. of Their Resp. to Def.'s Mot. To Dismiss ("Pls.' Resp.") [8-1].)   Defendant reiterates its arguments in reply, and asserts that plaintiff should not be granted leave to amend to add a hostile work environment claim. (See generally Def.'s Reply [11].)

### A.   Plaintiffs' ADEA Claim (Count I)

Defendant argues that plaintiffs' ADEA claims should be dismissed for failure to exhaust administrative remedies.   Specifically, APS argues that Mr. Appiah and Ms. Blackmon's ADEA claims fail as a matter of law because there is no allegation that they filed a charge of discrimination with the EEOC before bringing suit.  (Def.'s Br. 5-7.)  Additionally, defendants argue that Ms. Hopkins, Ms. Dent, Mr. Edmonson, and Ms. Ellis's ADEA claims are due to be dismissed because they have not alleged that they received a right to sue letter from the EEOC.  (Id. at 7-9.)   Plaintiffs respond that Mr. Appiah and Ms. Blackmon sufficiently alleged that they filed a charge with the EEOC because the Amended Complaint alleges that all named plaintiffs timely filed EEOC charges.   (Pls.' Resp. 4-6.)  Plaintiffs also attach copies of the EEOC charges filed by Mr. Appiah and Ms. Blackmon, as well as those of Ms. Dent, Mr. Edmondson, Ms. Ellis, Ms. Patterson, and Ms. Truitt.  (See Pls.' Ex. A [8-2].)  Plaintiffs further respond that receipt of a right to sue letter is not required before filing a lawsuit in an ADEA

16

discrimination case. (Pls.' Resp. 6-15.) Defendant does not address this argument in reply, but instead argues that regardless, Mr. Appiah and Ms. Blackmon's ADEA claims are premature because they did not wait sixty days to file this action after bringing their charges with the EEOC. (Def.'s Reply 2-5.)

### 1. Charges of Discrimination

The ADEA requires that an individual exhaust available administrative remedies by filing a charge of discrimination with the EEOC before filing a lawsuit. See Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004) (citing 29 U.S.C. §626(d)(2)); Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1291 (11th Cir. 2002). Such a charge must be filed within 180 days after the alleged unlawful practice occurred. See 29 U.S.C. § 626(d)(1).

Plaintiffs' ADEA claims should not be dismissed for failure to exhaust administrative remedies because each has properly alleged that he or she filed a charge of discrimination with the EEOC. The Amended Complaint specifically alleges that six of the eight plaintiffs filed such a charge. (See Am. Compl. ¶ 43 (Ms. Hopkins); ¶ 52 (Ms. Dent); ¶ 61 (Mr. Edmondson); ¶ 97 (Ms. Ellis); ¶ 109 (Ms. Patterson); ¶ 125 (Ms. Truitt).) As to the remaining two plaintiffs, Mr. Appiah and Ms. Blackmon, APS is correct that the Amended Complaint does not allege with specificity that these plaintiffs filed a charge. However, the Amended

17

Complaint does allege generally that all of "[t]he named Plaintiffs in this action filed timely complaints on behalf of themselves and those similarly situated" with the EEOC.  (Id. ¶ 30.)

Moreover, plaintiffs have attached copies of the EEOC charges filed by seven of the eight plaintiffs to the Response, including those filed by Mr. Appiah and Ms. Blackmon.  (See Pls.' Ex. A, at 1-3 (Mr. Appiah); 12-13 (Ms. Blackmon).)  The Court may consider these charges of discrimination without converting the Motion to Dismiss into a motion for summary judgment because they are referenced in the Amended Complaint, are central to plaintiffs' claims, and their authenticity has not been disputed.  See Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (per curiam) (stating that a court may consider documents "outside the four corners of the complaint" when deciding a motion to dismiss, if the documents are central to the plaintiff's allegations and are undisputed in terms of authenticity); see also Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").

Accordingly, plaintiffs have properly plead that they have each filed a charge of discrimination with the EEOC and their ADEA claims should not be dismissed for failure to exhaust administrative remedies on that basis.

### 2.    Right to Sue Letters

APS next argues that the ADEA claims brought by Ms. Hopkins, Ms. Dent, Mr. Edmondson, and Ms. Ellis should be dismissed as untimely because these plaintiffs failed to allege that they received right to sue letters from the EEOC. There is no requirement that an ADEA plaintiff receive a notice of right to sue from the EEOC before bringing suit.   See 29 C.F.R. § 1626.18(b) ("[a]n aggrieved person whose claims are the subject of a timely pending charge may file a civil action at any time after sixty days have elapsed from the filing of the charge with the Commission (or as provided in § 1626.12) without waiting for a Notice of Dismissal or Termination to be issued"); see also Grayson v. K Mart Corp., 79 F.3d 1086, 1100 (11th Cir. 1996) (an employee may sue before the EEOC issues a right-to-sue letter under the ADEA); Bost, 372 F.3d at 1238 ("Unlike Title VII, the ADEA does not require that the plaintiff first receive a right to sue notice from the EEOC prior to commencing suit")).  If the EEOC does issue the employee a right-to-sue letter, the employee must file a complaint

19

within ninety days of receipt of that letter.  <u>See</u> <u>Santini v. Cleveland Clinic Fla.</u>, 232 F.3d 823, 825 (11th Cir. 2000) (per curiam).

Defendant correctly observes that the Amended Complaint does not allege that Ms. Hopkins, Ms. Dent, Mr. Edmondson, and Ms. Ellis received notices of right to sue, and plaintiffs did not attach these notices to the Amended Complaint or Response.  However, because there is no requirement of receipt of a notice of right to sue before bringing suit under the ADEA, that omission does not mean that plaintiffs have failed to exhaust their administrative remedies.  Accordingly, plaintiffs' ADEA claims are not premature due to failure to allege receipt of a right to sue notice.

### 3.    Section 626(d)'s Sixty-Day Waiting Requirement

Defendant next contends that Mr. Appiah and Ms. Blackmon's claims should still be dismissed as premature, because they filed the Amended Complaint two days after filing their EEOC charges.  After filing a charge of discrimination with the EEOC in an age discrimination case, the employee "must then wait at least 60 days before filing a civil action."  <u>Bost</u>, 372 F.3d at 1238 (citing <u>Grayson</u>, 79 F.3d at 1100 (plaintiff "must wait sixty days after his EEOC charge is filed before commencing a civil action") and 29 U.S.C. § 626(d) ("No civil action may be commenced by an individual under this section until 60 days

after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission.")).    The sixty-day waiting period "afford[s] the EEOC or state agency the opportunity to informally conciliate disputes and thereby divert them from the courts."  Grayson, 79 F.3d at 1100 n.23.

APS contends that if a plaintiff fails to wait the full sixty days to file suit, the case may be dismissed as premature, or, alternatively, the court may stay the case until the full sixty days has elapsed, in order to give the EEOC the full period for conciliation.   (See Def.'s Reply 3-5.)   Circuit and district courts dispute whether a violation of the sixty-day waiting period requires dismissal or a stay of the action.  See Reed v. Northrop Grumman Ship Sys., Inc., No. CIV.A. 04-1214, 2004 WL 2115596, at *2–4 (E.D. La. Sept. 17, 2004) (collecting cases).  Several circuits hold that the sixty-day period is jurisdictional and that dismissal for noncompliance with Section 626(d) is required.  See, e.g., Chapman v. City of Detroit, 808 F.2d 459, 462 (6th Cir. 1986); Dempsey v. Pac. Bell Co., 789 F.2d 1451, 1453 (9th Cir. 1986).  These courts typically dismissed untimely ADEA claims instead of staying them when either the district courts had reached the merits or the untimeliness was only an alternate ground for dismissal.  See Chapman, 808 F.2d at 462 (alternate ground); Dempsey, 789 F.2d at 1453 (merits

21

reached); Cannon v. Univ. of Chi., 559 F.2d 1063, 1076 (7th Cir. 1976) (alternate

ground), rev'd on other grounds, 441 U.S. 677 (1979).

Other circuit and district courts have found that a stay, rather than dismissal,

of the federal action is appropriate.  See, e.g., Dalessandro v. Monk, 864 F.2d 6,

8-9 (2d Cir. 1988) (finding that a violation of Section 626(d)'s sixty-day waiting

period requires stay of federal suit, particularly when district court did not reach

the merits); Gelover v. Lockheed Martin, 971 F. Supp. 180, 182 (E.D. Pa. 1997)

(staying case to allow EEOC to fully conciliate because the court "cannot

determine from the record whether the plaintiff's filing of the instant lawsuit

affected the EEOC's investigation of his charge"); Strange v. Nationwide Mut.

Ins. Co., 867 F. Supp. 1209, 1213 (E.D. Pa. 1994) (staying case for "the amount

of the waiting period that had not passed" when plaintiffs filed suit); Popkins v.

Zagel, 611 F.Supp. 809, 812-13 (C.D. Ill. 1985) (finding that the court had

jurisdiction over ADEA claim filed only twenty-seven days after charge because

"[t]he law does not require the performance of meaningless acts.").  Additionally,

in Oscar Mayer & Co. v. Evans, 441 U.S. 750 (1979), the Supreme Court held

that the proper remedy for an ADEA claim filed prematurely under 29 U.S.C. §

633(b), a provision similar to 29 U.S.C. § 626(d) that requires an ADEA plaintiff

to delay his federal lawsuit for sixty days after commencing proceedings under a

state law protecting employees from age discrimination, was a stay for the amount of time remaining.  See id. at 765 n.13.  The Supreme Court also noted that "generally suspension of proceedings is preferable to dismissal with leave to refile" as a remedy for the premature filing of discrimination suits.  Id.

The undersigned could not locate, and defendant does not cite, any controlling authority directly on point from this Circuit.  Defendant does cite Bost v. Federal Express Corp., in which the Eleventh Circuit held that dismissal was the proper remedy when plaintiff filed suit after completing an EEOC intake form, but before filing a charge or receiving a right to sue notice.  However, Bost is distinguishable from the instant case, because unlike Mr. Appiah and Ms. Blackmon, who did file charges, albeit prematurely, before bringing suit in federal court, the plaintiff in Bost filed suit before ever filing a charge with the EEOC.  Thus, dismissal was the proper remedy, even though plaintiff eventually received the notice of right to sue while the case was still pending.  Bost, 372 F.3d at 1241.

District courts in this Circuit have not further clarified the proper remedy for a violation of the sixty-day period in § 626(d).  Compare Kazanzas v. Walt Disney World Co., 518 F. Supp. 292, 294 (M.D. Fla. 1981), rev'd on other grounds, Kanzanzas v. Walt Disney World Co., 704 F. 2d. 1527 (11th Cir. 1983)

(denying defendant's motion for judgment notwithstanding the verdict, and holding that despite plaintiff's failure to wait full sixty days in violation of 29 U.S.C. § 626(d), "[t]his default caused no harm to the defendant as evidenced by the fact that no effort was made to stay this suit until the running of the 60 day period")), with Brava Consultants v. O'Higgins, No. 04-80052-Civ-Ryskamp/Vitunac, 2004 U.S. Dist. LEXIS 31970 (S.D. Fla. Mar. 17, 2004), R. & R. adopted by, Brava Consultants v. O'Higgins, No. 04-80052-CIV-RYSKAMP/VITUNAC, 2004 U.S. Dist. LEXIS 31969 (S.D. Fla. Apr. 8, 2004) (dismissing suit filed by pro se litigant one day after charge filed with EEOC in order to avoid duplication of the efforts of the EEOC and to conserve judicial resources, but only after plaintiff failed to respond to court's show cause order or otherwise "carry her burden of proof to show that equitable modification is required").

Mr. Appiah and Ms. Blackmon each filed charges with the EEOC on April 5, 2016, and filed the instant lawsuit two days later, on April 7, 2015. They were thus fifty-eight days premature. As plaintiffs observe, the required sixty-day period has elapsed since the date they filed the Amended Complaint. Mr. Appiah and Ms. Blackmon have not alleged whether they have received their notices of right to sue, after which they must bring suit within ninety days. Thus, the

24

undersigned cannot determine whether dismissal would preclude them from bringing their claims, and cannot determine that the EEOC has fully conciliated the claim.  Out of an abundance of caution, a stay for the remaining fifty-eight days seems most appropriate.

Accordingly, the undersigned **REPORTS** that plaintiffs have not failed to exhaust administrative remedies as to their ADEA claims.  The undersigned **FURTHER REPORTS** that the ADEA claims of Mr. Appiah and Ms. Blackmon are premature given 29 U.S.C. § 626(d).  As a remedy, the undersigned **ORDERS** that this case be **STAYED** for the remaining fifty-eight days required under that statute to allow the EEOC to attempt conciliation.

### B.   Plaintiffs' OWBPA Claim (Count II)

Defendant argues that plaintiffs' OWBPA claim fails as a matter of law because that statute does not provide a separate right of action.  (Def.'s Br. 10.) Plaintiffs respond that they will dismiss the OWBPA claim without prejudice and further request leave of the Court to amend the Amended Complaint accordingly. (Pls.' Resp. 15.)

Given the concession that Count II is without merit and has been abandoned, plaintiffs need not amend again just to drop the OWBPA claim.  If, however, plaintiffs do seek leave to amend to add any other claim, it can be

25

labeled Count II.   Accordingly, the undersigned **REPORTS** that plaintiffs' OWBPA claim (Count II) should be **DISMISSED**.

### C.   Motion for a More Definite Statement

Finally, APS moves in the alternative for a more definite statement of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(e).  (Def.'s Br. 2, 11-18; Def.'s Reply 2, 10-12.)  The Federal Rules of Civil Procedure provide that:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

See Fed. R. Civ. P. 12(e).  "Rule 12(e) motions are greatly disfavored by the courts.  A motion for a more definite statement is properly made only if a pleading is so vague or ambiguous that a party is not reasonably able to frame a responsive pleading."  Duracell Inc. v. SW Consultants, Inc., 126 F.R.D. 571, 576 (N.D. Ga. 1989) (citation omitted); see also Choat v. Rome Indus., Inc., 480 F. Supp. 387, 391 (N.D. Ga. 1979) (denying motion for more definite statement, and noting that "[a]ny information that defendants require to prepare for trial may be obtained through discovery procedures").

26

Defendant argues that that the Amended Complaint should be dismissed because it is an impermissible shotgun pleading.  APS asserts that the two counts incorporate every antecedent allegation, plaintiffs' claims and defenses are so commingled that it is virtually impossible to tell which allegations of fact are intended to support which claims for relief, and plaintiffs fail to plead separate, discrete causes of action in separate counts.  (Def.'s Br. 11-17.)  Defendant also asserts that plaintiffs' ADEA claim appears to bring a claim both for age discrimination and for hostile work environment.  (Id.)  Plaintiffs respond that they have successfully plead a claim for relief for age discrimination in violation of the ADEA, and did not attempt to create two separate claims in one cause of action.  (Pls.' Resp. 16-24.)  Plaintiffs further respond that while they did not intend to plead a claim for hostile work environment, they will move to amend the Amended Complaint to add this claim "pursuant to Defendant's suggestion." (Id. at 24.)  APS replies that plaintiffs cannot refute the contention that they incorporate every antecedent allegation into each count of the Amended Complaint.  (Def.'s Reply 10-12.)  Defendant further replies that to the extent

plaintiffs assert an ADEA hostile work environment claim, they have failed to exhaust their administrative remedies.  (Id. at 5-9.)[4]

While there is no precise definition of a "shotgun pleading," "[w]here . . . each count incorporates every antecedent allegation by reference, the defendant's affirmative defenses are not likely to respond to a particular cause of action but, instead, to the complaint as a whole.  Such disjointed pleadings make it difficult, if not impossible, to set the boundaries for discovery." Byrne v. Nezhat, 261 F.3d 1075, 1129 (11th Cir. 2001).  Similarly, "shotgun pleadings" are often "framed in complete disregard of the principle that separate, discrete causes of action should be plead [sic] in separate counts." Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996); see also Beckwith v. Bellsouth Telecomms., Inc., 146 F. App'x 368, 371 (11th Cir. 2005) (per curiam) (shotgun pleading defined by "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading.").

-----

[4] To the extent the parties dispute whether plaintiffs may properly amend the Amended Complaint to include a claim for hostile work environment, the undersigned will not consider this dispute, because plaintiffs have not actually filed a motion seeking to add this claim.

In the instant case, the Amended Complaint contains several different sections.  (See Am. Compl. ¶¶ 4-5 ("Nature of the Claim"); ¶¶ 6-18 ("Parties"); ¶¶ 125-27 ("Allegations of Age Discrimination"); ¶¶ 128-29 (Count 1, violations of the ADEA); ¶¶ 130-31 (Count II, violations of the OWBPA).)  As reflected in the summary (see supra Part II), the Amended Complaint is long, but detailed. Each section sufficiently reveals the nature of plaintiffs' claims, and the Amended Complaint is not so unclear as to prevent defendant from framing a responsive pleading.  Defendant is correct that both Count I and Count II state that "plaintiffs repeat and reallege each and every allegation . . . as if set forth fully herein."  (See Am. Compl. ¶ 128 (Count I), ¶ 130 (Count II.)  However, that alone is insufficient to make the Amended Complaint a shotgun pleading, particularly because it is comprised of forty-six pages and 131 paragraphs that include allegations brought by eight separate plaintiffs.  APS can discern the nature of the claims brought against it, and frame a responsive pleading.  Defendant may seek any additional information required during discovery.

Accordingly, the undersigned **REPORTS** that plaintiffs' Amended Complaint should not be dismissed as a shotgun pleading, and that defendant's Motion for a More Definite Statement should be **DENIED**.

29

IV.   **CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that APS's Motion to Dismiss [6] be **DENIED** as to Count I and **GRANTED** as to Count II.

The undersigned **ORDERS** that this case be **STAYED** for **FIFTY-EIGHT (58) DAYS**.

The undersigned **FURTHER DENIES AS MOOT** defendant's Motion for Extension of Time [12] and **DIRECTS** the parties to confer and jointly file a Preliminary Report and Discovery Plan within **FOURTEEN (14) DAYS**.

**SO ORDERED AND RECOMMENDED**, this 8th day of August, 2016.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE